# United States Court of Appeals

For the Seventh Circuit

Chicago, Illinois 60604

**NOTICE OF ISSUANCE OF MANDATE**

**FILED**

**DEC 3 1 2003**

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS
EAST ST. LOUIS OFFICE

DATE:   December 24, 2003

TO:     Norbert G. Jaworski
        United States District Court
        Southern District of Illinois
        Room 142
        750 Missouri Avenue
        P.O. Box 186
        East St. Louis, IL  62202

FROM:   Gino J. Agnello, Clerk

RE:     03-1338
        Vollmer, Thomas v. Selden, Lynde
        99 C 434, G. Patrick Murphy, Chief Judge

Herewith is the mandate of this court in this appeal, along with the Bill of Costs, if any. A certified copy of the opinion/order of the court and judgment, if any, and any direction as to costs shall constitute the mandate.

[ ] No record filed
[X] Original record on appeal consisting of:

**ENCLOSED:**                                            **TO BE RETURNED AT LATER DATE:**
  [13]    Volumes of pleadings                           [ ]
  [4]     Loose pleadings                                [ ]
  [22]    Volumes of transcripts                         [ ]
  [8]     Volumes of exhibits                            [ ]
  [ ]     Volumes of depositions                         [ ]
  [ ]     In Camera material                             [ ]
  [ ]     Other_____          [ ]

          Record being retained for use                  [ ]
          in Appeal No. _____

          Copies of this notice sent to:        Counsel of record
          [ ]    United States Marshal
          [ ]    United States Probation Office

**NOTE TO COUNSEL:**
If any physical and large documentary exhibits have been filed in the above-entitled cause, they are to be withdrawn ten days from the date of this notice. Exhibits not withdrawn during this period will be disposed of.

Please acknowledge receipt of these documents on the enclosed copy of this notice.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
          Received above mandate and record, if any, from the Clerk, U.S.
          Court of Appeals for the Seventh Circuit.
Date: _____          _____
(1071-120397)                                   Deputy Clerk, U.S. District Court

# United States Court of Appeals

For the Seventh Circuit

Chicago, Illinois 60604

**JUDGMENT - WITH ORAL ARGUMENT**

Date: December 2, 2003

BEFORE:          Honorable RICHARD D. CUDAHY, Circuit Judge

                Honorable FRANK H. EASTERBROOK, Circuit Judge

                Honorable KENNETH F. RIPPLE, Circuit Judge

No. 03-1338

THOMAS G. VOLLMER, PEGGY R. POSPESHIL, MARY KENNAH, et al.,
        Plaintiffs - Appellees
  and

PUBLISHERS CLEARING HOUSE, a New York limited partnership and
CAMPUS SUBSCRIPTIONS, INCORPORATED, a New York corporation,
        Defendants - Appellees
  v.

LYNDE SELDEN, II and RICHARD H. ROSENTHAL,
        Respondents - Appellants

Appeal from the United States District Court for the
Southern District of Illinois
No. 99 C 434, G. Patrick Murphy, Chief Judge

    The judgment of the District Court is VACATED, in accordance with the decision of this court entered on November 26, 2003. Each party to bear its own costs.

(1061-110393)

# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 03-1338

THOMAS G. VOLLMER, PEGGY R. POSPESHIL,
MARY KENNAH, ET AL.,

*Plaintiffs-Appellees,*

and

PUBLISHERS CLEARING HOUSE AND CAMPUS
SUBSCRIPTIONS, INCORPORATED,

*Defendants-Appellees,*

v.

LYNDE SELDEN, II AND RICHARD H. ROSENTHAL,

*Respondents-Appellants.*

Appeal from the United States District Court
for the Southern District of Illinois.
No. 99 C 434—**G. Patrick Murphy,** *Chief Judge.*

ARGUED SEPTEMBER 9, 2003—DECIDED NOVEMBER 26, 2003

Before CUDAHY, EASTERBROOK, and RIPPLE, *Circuit Judges.*

CUDAHY, *Circuit Judge.* Frederick L. Hawk, represented by his counsel, Lynde Selden II and Richard H. Rosenthal,

attempted to intervene in this class action. The district court denied the motion to intervene and *sua sponte* levied $50,000 in sanctions against Selden and Rosenthal under Federal Rule of Civil Procedure 11 (Rule 11). The district court found that they had failed to properly investigate Mr. Hawk's claims and had filed pleadings on his behalf for the sole purpose of extracting a fee. Selden and Rosenthal appealed the district court's imposition of sanctions and Hawk appealed the denial of intervention. This court affirmed the denial of intervention but vacated the imposition of sanctions, finding that the district court improperly relied on evidence outside of the record and failed to provide a detailed explanation as to why an "extremely large" *sua sponte* levy of sanctions was appropriate. *See Vollmer v. Publishers Clearing House*, 248 F.3d 698, 709-12 (7th Cir. 2001) (*Vollmer I*). On remand, the district court reduced the sanctions to $35,000 but provided no additional explanation for the amount and continued to rely on evidence outside of the record. This appeal followed.

As in most sequels, virtually nothing has changed since we last met the characters, precious little of the content is novel and we find ourselves asking "why are we back here?" Unlike most sequels, however, we do not lay the groundwork for a trilogy. For the reasons that follow, we vacate the district court's imposition of Rule 11 sanctions.

I

BACKGROUND

We will assume familiarity with our prior opinion in this matter and will repeat only those facts necessary to understand the issues presented in this appeal. *See Vollmer I*, 248 F.3d at 701-05. On February 3, 1998, Thomas G. Vollmer filed this class action lawsuit against Publishers Clearing House (PCH), alleging violations of Illinois

consumer protection laws. The complaint claimed that PCH fraudulently induced customers to purchase magazines by falsely suggesting in its advertising that customers could increase their chances of winning a sweepstakes by making purchases.

After a failed motion to dismiss, the parties entered into a stipulation of settlement, filed with the district court on June 23, 1999. The district court conditionally certified a class for settlement purposes and granted preliminary approval of the settlement. The settlement included remedial undertakings by PCH aimed at addressing the allegations raised in the complaint and also provided monetary relief in the form of refunds for class members who filed a claim during the claim period. Initially, the settlement contained a $10 million cap on refunds.

Hawk, a farm equipment salesman from San Diego, California, was a past customer of PCH and had received a notice of settlement in early August 1999. Hawk testified that shortly thereafter, he contacted Selden, his lawyer and an appellant. Hawk knew Selden because Hawk's wife was an administrator in Selden's office. Selden, joined by Rosenthal, contacted class counsel requesting information and access to documents regarding the settlement, ostensibly to determine whether it would be in Hawk's best interest to opt out of the settlement class. These requests were denied by class counsel.

As a result, on September 13, 1999, Hawk filed a "Petition to Intervene for Limited Purposes of Viewing Document Depository," claiming that intervention was appropriate under Rule 24(a) (intervention of right) and Rule 24(b) (permissive intervention). The petition noted that "[b]efore Intervenor accepts the proffered settlement . . . [he] wants to view the document depository defendant has made available to class counsel." Both class counsel and the defendants opposed the motion, asserting that Selden

and Rosenthal were "professional objectors" or "claim jumpers" who filed such claims often in the past, usually without merit.

On October 4, 1999, Hawk filed "Intervenor's Motion to Invervene" in which he sought to intervene for all purposes. At that point, the district court seemed inclined to believe that Hawk meant to intervene to represent others in the action.

AARP (formerly known as the American Association of Retired Persons), along with more than twenty attorneys general of various states and other individuals who had a separate class action currently pending against PCH, also sought to intervene. One month after Hawk sought to intervene, when it became clear that claims would exceed the $10 million cap, PCH agreed to pay all approved claims in full.

At a hearing held regarding the motions to intervene, Hawk testified that he believed $10 million was insufficient and would provide only pennies on the dollar. However, Hawk also testified that he did not know what his losses were or what he would claim; he enjoyed the magazines he ordered; he may have entered the sweepstakes as many as twelve times without purchasing a magazine; he was totally unaware of the injunctive relief portion of the settlement; and he did not know what his basis was for asking to represent other individuals in the lawsuit. Moreover, Hawk did not recall ever reading the "Motion to Intervene" filed on his behalf.

The district court denied Hawk's motion to intervene and *sua sponte* ordered that Selden and Rosenthal show cause why they had not violated Rule 11(b) and should not be sanctioned. On February 25, 2000, the district court held a hearing on Selden and Rosenthal's objection to the imposition of Rule 11 sanctions. The district court imposed $50,000 in sanctions against Selden and Rosenthal, stating

that Hawk's lack of a "passing understanding" about the nature of the settlement showed that he was put forth to cause delay and increase the cost of litigation so that his lawyers could extract a fee. The district court judge also asserted that it had "made it the court's business to find out all I can" about the attorneys' legal practice and that "I haven't been able to find anyone anywhere that say these are recognized class counsel." The district court concluded that Selden and Rosenthal were "not real class action lawyers" but instead that "they follow people around the country, . . . and then they stick their nose in [a case] and they extract money." The district court used the amount of attorney's fees necessary to defend against the intervention as a "marker" in determining the amount of the sanctions and also said that the amount was necessary to deter such conduct, given the huge fees available in class action litigation. *See Vollmer I*, 248 F.3d at 705.

On appeal, in an opinion by Judge Ripple, we affirmed the district court's denial of the motion to intervene but reversed and remanded to address concerns about the sanctions. This court found, in relevant part, that it was improper for the district court to rely on evidence not in the record and the "extremely large" sanctions required a detailed explanation by the district court—not merely "cursory" reasoning. *Id.* at 710-11.

On remand, the district court issued a new order to show cause why sanctions should not be imposed. The appellants provided a written response and also spoke at a hearing on the imposition of such sanctions. In an order dated January 15, 2003, the district court re-imposed sanctions. While the new order omitted the previous language suggesting that the district court had considered facts not within the record, it nonetheless stated that it "conducted its own research into other class action litigation involving Selden and Rosenthal." App. at 559. Additionally, the district court reduced the sanctions to $35,000 but provided

no additional explanation for the amount. Instead, the district court judge stated, "we'll see how that fares." App. at 553. This appeal followed.

II

DISCUSSION

Rule 11 provides that, if an attorney presents a motion to a court for "any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation," monetary sanctions may be imposed. Fed. R. Civ. P. 11(b)(1) & (c); *Vollmer I*, 248 F.3d at 709. The district court found that Selden and Rosenthal encouraged Hawk to intervene for such purposes, solely to enable themselves to receive a fee as part of this litigation. As a result, the court, on its own initiative, imposed monetary sanctions under Rule 11(c)(1)(B), requiring Selden and Rosenthal to pay $35,000 to the district court. We review all aspects of the district court's decision to impose Rule 11 sanctions for abuse of discretion. *See Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405 (1990); *Vollmer I*, 248 F.3d at 709.

We begin our analysis by noting that a judge can sanction a litigant for filing a frivolous suit or claim regardless of the motives for such filing. *See Reed v. The Great Lakes Co., Inc.*, 330 F.3d 931, 936 (7th Cir. 2003). In this case, however, the judge never made a finding that Hawk's intervention was frivolous. App. at 559-60. Such a finding of frivolousness would have been inappropriate here in light of the fact that (a) AARP, along with a large number of attorneys general, also sought to intervene and their claims were not found frivolous; and (b) the settlement was significantly improved in favor of the class after Hawk and the others sought to intervene. *See Gottlieb v. Westin Hotel Co.*, 990 F.2d 323, 327 (7th Cir. 1993) ("Where

No. 03-1338                                                          7

Counsel's inquiry was objectively reasonable under the circumstances of the case . . . Rule 11 sanctions are inappropriate."). Thus, because Selden and Rosenthal's attempt to intervene was not frivolous, this court must decide whether sufficient evidence supports the district court's finding of an improper purpose.

The district court found that Selden and Rosenthal's improper purpose was seeking to intervene "solely to extort a fee for themselves." App. at 599. Certainly, it is not improper to file a non-frivolous claim in the hope of getting paid. If it were, every motion for attorney's fees would result in sanctions. There are two ways, however, in which an intervenor might get paid. An intervenor might get paid by raising the value of a class action settlement and receiving a percentage of the increase in value or a fixed-payment for having improved the settlement; on the other hand, he might intervene and cause expensive delay in the hope of getting paid to go away. The former purpose for intervening would be entirely proper, while the latter would not.

While the parties to a class action start out in an adversarial posture, once they reach the settlement stage, incentives have shifted and there is the danger of collusion. *See In re General Motors Corp.*, 55 F.3d 768, 778 (3d Cir. 1995) (noting that class actions can become a vehicle for collusive settlements); *see also* Deborah R. Hensler et al., *Class Action Dilemmas: Pursuing Public Goals for Private Gain*, 27 (RAND Institute for Civil Justice, 2000) (same). Class counsel, for instance, might settle claims for significantly less than they are worth, not because they think it is in the class's best interest, but instead because they are satisfied with the fees they will take away. *See Rand v. Monsanto Co.*, 926 F.2d 596, 599 (7th Cir. 1991) ("[T]he representative and counsel may be tempted to sell out the class for benefits to themselves.").

Intervenors counteract any inherent objectionable tendencies by reintroducing an adversarial relationship into the settlement process and thereby improving the chances that a claim will be settled for its fair value. *See, e.g., Crawford v. Equifax Payment Services, Inc.*, 201 F.3d 877, 882 (7th Cir. 2000) (reversing an order approving settlement based on an intervenor's appeal); *General Motors*, 55 F.3d at 803 ("[W]here there is an absence of objectors, courts lack the independently-derived information about the merits to oppose proposed settlements."). Intervenors have the potential to play this important role even in the numerous valid class actions where each plaintiff is seeking to be compensated only by a few dollars. *Cf. Crabill v. Trans Union, L.L.C.*, 259 F.3d 662, 665 (7th Cir. 2001) ("[T]he core function of [the class action] is to enable the litigation of claims too small to warrant the costs of prosecuting a separate suit for each claim."); *Rand*, 926 F.2d at 599 ("Class actions assemble small claims—usually too small to be worth litigating separately, but repaying the effort in the aggregate."). The slightness of individual recovery does not make the counsel's purpose invalid nor his role as objector less vital. Thus, it would have been proper for Selden and Rosenthal to file a non-frivolous objection with the purposes of increasing the value of the settlement and thereby deriving a fee.

The district court, however, found that Selden and Rosenthal's purpose in seeking to intervene was extortion. *See* App. at 559. Extortion is the act or practice of obtaining something or compelling some action by illegal means, as by force or coercion. *Black's Law Dictionary* (7th ed. 1999). In the context of intervening in a class action settlement, extortion would mean intervening not to increase the value of the settlement, but in order to get paid to go away. As the district court's order correctly suggested, this would be an improper purpose for intervening. This is, in part, because it would benefit only the intervenors at the

No. 03-1338                                                    9

expense of all other parties to the litigation. *Cf.* Jeffrey N. Gordon, *Ties That Bond: Dual Class Common Stock and the Problem of Shareholder Choice*, 76 Cal. L. Rev. 1, 12-13 (1988) (noting in an analogous situation that "greenmailers" who threaten disruption unless "paid to go away" may decrease shareholder value).

Therefore, we must determine whether there is sufficient evidence in the record to show that Selden and Rosenthal intervened for the purpose of getting paid to go away. We find that there is not. The district court relied on (a) Hawk's testimony, which it found demonstrated a lack of familiarity with basic components of the settlement, as well as (b) the fact that Selden and Rosenthal have sought to intervene in a number of nationwide class actions. *See* App. at 559.

### A. Hawk's Testimony

Let us assume for the moment that Hawk knew nothing at all about the settlement in which he was intervening and in fact thought he was appearing in court on October 4, 1999 to contest a traffic ticket. What would that teach us about Selden and Rosenthal's purpose for seeking intervention? Certainly, we could infer that whatever Selden and Rosenthal's purpose was in seeking intervention, it was their own and was not attributable to Hawk. However, it would be improper to infer from this evidence alone that Selden and Rosenthal's purpose was extortion. Selden and Rosenthal may have been legitimately concerned that the settlement was inadequate and initiated the intervention for that reason. Even if they were not, they may have been motivated to improve the settlement for the class and to thereby recover a fee, which, as discussed *supra*, is not improper if the objection is non-frivolous.

Although it involves an award of attorney's fees rather than Rule 11 sanctions, we find *Rothenberg v. Security*

*Mgmt. Co., Inc.* to be instructive on this point. *See* 736 F.2d 1470, 1472 (11th Cir. 1984). In *Rothenberg*, Jack and Shirley Rothenberg had filed individual and derivative actions against Security Management Corporation. When their derivative actions were dismissed, the district court awarded attorney's fees to the defendant finding that the derivative actions were brought in bad faith. On appeal, the Eleventh Circuit considered the two sets of findings on which the district court based its award:

> In the first set, the [district] court recited those facts which supported dismissal of both Jack's and Shirley's derivative actions: Jack did not own stock in the corporation at the time the derivative suit was filed and *Shirley had not read the complaint, had no personal knowledge of the facts surrounding the allegations made in the complaint, and "displayed an obvious unwillingness to learn about the suit by not acquiring more than a rudimentary understanding of the case."* (citation omitted) The second set of findings relates to appellants' motive for bringing the suit: the Rothenbergs brought the derivative actions as "leverage" to enhance their personal claims.

*Id.* (emphasis added). The Eleventh Circuit vacated the district court's award, holding that in determining the propriety of the bad faith fee award, the inquiry should focus primarily on the conduct and motive of a party (the second set of findings) rather than on what it called the "validity of the case" (the first set of findings). *Id.* (citations omitted). The Eleventh Circuit, found, in essence, that Shirley's complete lack of familiarity with the details of the suit was of minimal relevance in determining whether she brought the suit for an improper purpose.

If it is fruitless for a court to attempt to determine the motive of a named plaintiff based on his or her ignorance of the case, it would be an even greater inferential leap to

No. 03-1338                                                      11

use the named plaintiff's ignorance to determine the motive of his or her attorney. In fact, the district court implicitly recognized the limited value of determining an attorney's motive on the basis of the breadth of his client's knowledge when it declined to impose sanctions on another intervenor, Mr. Hoy, who saw his own complaint for the first time when he appeared for the hearing on the order to show cause. *See* App. at 241; *cf.* App. at 206-08 (class counsel also asserted that Hawk was "better prepared in his questions" than Hoy and another intervenor who was not sanctioned). We find that, in and of itself, the plaintiff's level of familiarity with the details of his case to be of little relevance in determining the specific purpose of his counsel in initiating such case.[1] It certainly does not show that Selden and Rosenthal were attempting extortion.

B. History of Intervening

The district court's only other given explanation for its holding that Selden and Rosenthal intervened "solely to

---

[1] By so holding, this court does not intend in any way to endorse the practice of putting an ill-informed and ill-prepared plaintiff before the court. While it may reveal little about whether an attorney's purpose in bringing the suit is proper, it may itself be independently sanctionable conduct. *See Vollmer I*, 248 F.3d at 709 ("On its own, Mr. Hawk's testimony and the circumstances surrounding it would provide sufficient justification for the imposition of Rule 11 sanctions."). We decline to remand this issue to the district court, however, since any proper *sua sponte* sanction based solely on Hawk's testimony would necessarily be too low to warrant further expenditure of resources. *See, e.g., Kotsilieris* v. *Chalmers*, 966 F.2d 1181, 1188 n.2 (7th Cir. 1992) ("Considering the amount of judicial resources that have already been expended in reviewing this issue, and considering that it may cost more than the few thousand dollars at stake for courts and counsel to address this issue on remand, we will not remand.").

extort a fee for themselves" was its finding that "[t]hese attorneys have seemingly made intervening in nationwide class actions a routine practice." App. at 599. The district court apparently based this finding on four cases, which it cited in its order. *See In re Synthroid Marketing Litig.*, 201 F. Supp. 2d 861 (N.D. Ill. 2002); *French v. Selden*, 59 F. Supp. 2d 1152 (D. Kan. 1999); *In re The Prudential Ins. Co. of Am. Sales Practices Litig.*, 962 F. Supp. 450 (D.N.J. 1997); *White, III v. General Motors Corp.*, 718 So.2d 480 (La. Ct. App. 1998).

Even assuming that Selden and Rosenthal have routinely engaged in a practice of intervening, this finding teaches us little about the propriety of their motives for intervening in this case. Each of these past interventions may have been made out of concern for the class members or at least with the intention of increasing the value of the settlement. In fact, with the exception of the case at bar, none of Selden and Rosenthal's interventions have ever been found to be frivolous or motivated by an improper purpose.

In a recent case, this court reviewed a district court's *sua sponte* award of $1,000 in Rule 11 sanctions based on its finding that the plaintiff was an "extortionist." *See Reed*, 330 F.3d at 936-37. The district court based its finding that the plaintiff was an extortionist on his 15-year history of bringing similar lawsuits. This court vacated the district court's award because none of the plaintiff's previous cases had been adjudged frivolous and the district court did not find them to be frivolous. *Id.* ("[T]he sanctions order thus appears to rest on nothing more solid than the speculation that Reed is an extortionist. This speculation is too thin to sustain that order."). So too, in this case Selden and Rosenthal's past objections, which have never been adjudged frivolous, cannot form the proper basis of a sanctions award.

Although the district court cited no other evidence supporting its finding of an improper motive, we have considered the record in its entirety and see no other basis upon which to support the proposition that either Selden or Rosenthal sought to intervene in order to get paid to go away or for other improper purposes. At oral argument, class counsel suggested that the improper purpose could be inferred from the fact that Selden and Rosenthal ultimately declined to intervene. We find this fact to be of little relevance as well. By the time Selden and Rosenthal declined to intervene, there were numerous good reasons for them to do so, including the amount of time and effort they had already expended, and the fact that other capable objectors had emerged. In sum, we find no evidence in the record supporting the finding that Selden and Rosenthal intervened solely to extort a fee, and the imposition of sanctions was therefore an abuse of discretion.

Further, the district court disregarded this court's instructions in *Vollmer I*, in which we indicated that it was inappropriate for the district court to rely on evidence outside of the record and that the court had to provide a more detailed explanation for such a large award of sanctions. The district court ignored both instructions. Even after remand, the district court's opinion indicated that it "conducted its own research into other class action litigation involving Selden and Rosenthal" but failed to cite to any of this research or to indicate what part of the research, if any, the district court relied on in imposing sanctions. App. at 559. The few cases cited by the district court in which Selden and Rosenthal allegedly intervened were not the result of the court's "own research," since they had been repeatedly cited by the class since the two filed objections with the court. Further, the district court failed to provide any additional explanation for the exceptionally large sanctions. Instead, the district court arbitrarily reduced its sanctions from $50,000 to $35,000 stating, "we'll

14                                               No. 03-1338

see how that fares." Given that in *Vollmer I* we suggested that $500-$1,000 was an appropriate amount for sanctions imposed *sua sponte*, we find that $35,000 in sanctions fares pretty poorly.

Finally, we reiterate that even if we had found sanctions to be appropriate in this case, absent extraordinary circumstances not shown here, *sua sponte* sanctions are generally limited to several thousand dollars. *See, e.g., In re Bagdade*, 334 F.3d 568, 571-72 (7th Cir. 2003) (imposing a $1,000 *sua sponte* sanction); *Powers v. Duckworth*, No. 90-2492, 1995 WL 496751, at *3 (7th Cir. 1995) (upholding $500 *sua sponte* sanctions); *Burda v. M. Ecker Co.*, 2 F.3d 769, 776 (7th Cir. 1993) (reducing *sua sponte* sanction from $2,500 to $1,000). Given the resources already devoted to this issue and the potential additional costs of litigating it further, we would decline to remand. *See Kotsilieris*, 966 F.2d at 1188 n.2 (declining to remand sanctions in a case where the court found it would not be worth the expenditure of further resources).

## CONCLUSION

For the foregoing reasons, we VACATE the imposition of Rule 11 sanctions.

RIPPLE, *Circuit Judge*, concurring in the judgment. In my view, the district court could have sustained Rule 11 sanctions solely on the fact that counsel had offered Mr. Hawk as a party. However, the district court was not

No. 03-1338 15

required to rest its determination solely on this factor, and, indeed, it did not. Rather, it premised its imposition of sanctions not only on that ground but also on the ground that counsel had engaged in a pattern of conduct that amounted to "claim jumping." This latter reason is certainly not supported by the record.

Having afforded the district court a second opportunity to ground the award of sanctions on a specific and appropriate basis, I do not think that we need to give it a third chance. *See Kotsilieris v. Chalmers*, 966 F.2d 1181, 1188 n.2 (7th Cir. 1992). Accordingly, I join the judgment of the court.

A true Copy:

    Teste:

                     _____
                       *Clerk of the United States Court of*
                       *Appeals for the Seventh Circuit*

USCA-02-C-0072—11-26-03